Kareem FAHEEM–EL, on his own behalf and on behalf of all others similarly situated, Plaintiff,

v.

Paul KLINCAR, et al., Defendants.

No. 84 C 2561.

United States District Court, N.D. Illinois, E.D.

Oct. 25, 1985.

Thomas Peters, Murphy, Peters, Davis & O'Brien, Chicago, Ill., for plaintiff.

Thomas A. Ioppolo, Asst. Atty. Gen., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case is a class action challenge to the Illinois parole revocation system. The court granted preliminary injunctive relief in an earlier opinion, *Faheem-el v. Klincar*, 600 F.Supp. 1029 (N.D.Ill.1984). It must now consider whether plaintiff and the class he represents are entitled to preliminary injunctive relief on the issue of the State's denial of bail to all alleged parole violators. Also before the court are plaintiff's petition for a rule to show cause why defendants should not be held in contempt of an earlier order of the court, and plaintiff's motion for summary judgment.

**1.** The legislature defined the parole term that follows the determinate sentence as a "mandatory supervisory release term." For the sake of convenience, reference to parole in the opinion

## I. BACKGROUND

### A. Illinois Parole System

Sentencing judges in Illinois have a maximum of seven sentencing options, including imprisonment. Illinois Rev.Stat. ch. 38, ¶ 1005–5–3(b). The legislature has mandated imprisonment for the most serious offenses. *Id.* at ¶ 1005–5–3(c). In other cases:

> Except where specifically prohibited by other provisions of [the Unified Correctional Code], the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that:
>
> (1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or
>
> (2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice.

Ill.Rev.Stat. ch. 38, ¶ 1005–6–1(a).

Most Illinois prisoners are paroled. In 1977 the legislature adopted a system of determinate sentences for felonies that included mandatory parole terms. Ill.Rev. Stat. ch. 38, ¶ 1005–8–1.[1] Individuals who were sentenced under the law in effect before February 1, 1978, the effective date of the determinate sentencing system, and who are otherwise eligible for parole, *see* Ill.Rev.Stat. ch. 38, ¶ 1003–3–3(a), may be paroled unless the Prisoner Review Board[2] determines that:

(1) there is a substantial risk that he will not conform to reasonable conditions of parole; or

(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or

(3) his release would have a substantially adverse effect on institutional discipline.

also covers such release terms, unless otherwise noted.

**2.** The Board consists of ten members appointed by the Governor to staggered terms. *See* Ill.

Ill.Rev.Stat. ch. 38, ¶ 1003–3–5(c).[3]

Parole is subject to conditions deemed necessary by the Prisoner Review Board to assist the parolee in leading a law-abiding life. Ill.Rev.Stat. ch. 38, ¶ 1003–3–7. Two conditions of every parole are that the parolee not violate any criminal statute or possess a firearm or other dangerous weapon. *Id.* at ¶ 1003–3–7(a). The Board in its discretion may also impose a variety of other conditions outlined by statute.[4]

As the Supreme Court recognized in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), parole is an integral part of the penological system. Parole is not a form of clemency. Rather, it is a variation of imprisonment designed to facilitate the integration of convicted criminals back into society. Subject to parole conditions, parolees are able to resume their normal job, family, work and community life. By shortening the periods of confinement, parole alleviates both prison overcrowding and the cost of maintaining prison systems.

The Prisoner Review Board is empowered to enforce compliance with parole conditions. *See* Ill.Rev.Stat. ch. 38, ¶ 1003–3–9. Among other options it may revoke parole and order the reincarceration of a parole violator. *Id.* at ¶ 1003–3–9(a)(3). Parole revocation has serious consequences for the parolee. First, the ties to job, family and community that the parolee may

have reestablished are again severed. *Cf. Barker v. Wingo*, 407 U.S. 514, 520–21, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972) (discussing the deleterious effects of imprisonment on pretrial detainees). Second, as a result of parole revocation, a parolee will generally face a substantial period of imprisonment. For parole violators who have been sentenced under the old indeterminate sentencing system, "recommitment shall be for any portion of the imposed maximum term of imprisonment or confinement which had not been served at the time of parole and the parole term, less the time elapsed between the parole of the person and the commission of the violation for which parole was revoked." Ill.Rev.Stat. ch. 38, ¶ 1003–3–9(a)(3)(i)(A). For those parolees who serve determinate sentences, recommitment is for the remainder of the parole term and, at the discretion of the Prisoner Review Board, up to one additional year representing time not served due to the accumulation of good conduct credit. *Id.* at ¶ 1003–3–9(a)(3)(i)(B).

The Supreme Court has recognized that the parolee has a liberty interest in continued parolee status. *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). It there characterized the revocation of parole as inflicting a "grievous loss" on the parolee and often on others: family, friends, employers. *Id.* The Court also recognized that the parolee

Rev.Stat. ch. 38, ¶¶ 1003–3–1, 1003–3–2.

**3.** Prisoners sentenced before the effective date of the determinate sentencing system could opt for a fixed release date, followed by a term of mandatory parole. Ill.Rev.Stat. ch. 38, ¶ 1003–3–2.1. Prisoners opting for a fixed release date waived their right to parole before that date.

**4.** The nonmandatory conditions on parole that may be imposed by the Prisoner Review Board on adult parolees are:

(1) Work or pursue a course of study or vocational training.

(2) Undergo medical or psychiatric treatment, or treatment for drug addiction or alcoholism.

(3) Attend or reside in a facility established for the instruction or residence of persons on probation or parole.

(4) Support his dependents.

(5) Report to an agent of the Department of Corrections.

(6) Permit the agent to visit him at home or elsewhere, to the extent necessary to discharge his duties.

Ill.Rev.Stat. ch. 38, ¶ 1003–3–7(b).

The rules of the Prisoner Review Board covering parole conditions supplement these statutory conditions. For example, the rules provide that the parolee must consult with and follow the advice of the parole agent before contacting prison inmates.

The parolee must get written permission of the parole officer before leaving the county, and provide the officer with notice of a change in job or residence. The parolee must provide the officer with a written monthly report. Finally, the rules give the Board an opportunity to impose special parole conditions. *See generally* Illinois Prisoner Review Board, *Rules Governing Parole*, XII.A.

is not the only one who has an interest in parole. Society has an interest in preventing the wrongful denial of parole in order to facilitate the reintegration of convicted criminals into society. *Id.* at 484, 92 S.Ct. at 2601. The Court also stated that "society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chances of rehabilitation by avoiding reactions to arbitrariness." *Id.* (footnote omitted).

The *Morrissey* Court outlined due process requirements that protected the parolee's substantial liberty interest. First, there must be a preliminary parole revocation hearing "conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." 408 U.S. at 485, 92 S.Ct. at 2602. This preliminary hearing must be before an "independent officer." *Id.* at 485–86, 92 S.Ct. at 2602–03. The parolee must be able to play an active role at the hearing:

> [T]he parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross examination.

*Id.* at 486–87, 92 S.Ct. at 2603. Second, the *Morrissey* Court held that within a "reasonable time" after the preliminary revocation hearing there must be a final revocation hearing. *Id.* at 488, 92 S.Ct. at 2603. The minimum requirements of due process at that hearing include:

> (a) written notice of the claimed violation of parole; (b) disclosure to parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) "a neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact-finders as to the evidence relied on and the reason for revoking parole.

*Id.* at 489, 92 S.Ct. at 2604. While these procedural requirements are not as strict as that of a criminal trial, *id.*, they nevertheless represent the constitutional minimum.

The Illinois parole revocation statute shows the influence of *Morrissey.* The statute provides for both a preliminary and final revocation hearing. Ill.Rev.Stat. ch. 38, ¶¶ 1003–3–9(c), –9(e). It requires parolees to be apprised by written notice of the alleged violations, allows them to be present at the final parole revocation hearing, which is before a panel of the Prisoner Review Board, and permits them to bring witnesses on their behalf. *Id.* at ¶ 1003–3–9(e). The rules of the Prisoner Review Board explicitly provide a much fuller range of procedural protections.[5] One notable feature of the statute and regulations is the absence of any provision for the release of alleged parole violators on bail pending a final revocation hearing.

---

**5.** The regulations of the Prisoner Review Board essentially track the language of *Morrissey.* They provide that the preliminary hearing be held within ten days of the parolee's reincarceration. In addition, at the request of the parolee, the chairman of the Prisoner Review Board can subpoena witnesses whose testimony is of substantial relevance. *See* Prisoner Review Board, *Rules Governing Parole,* XIV–XV.

## B. Faheem-el's Challenge

Plaintiff Kareem Faheem-el was sentenced in 1973 to a term of 30 to 90 years imprisonment for murder. He was paroled from the Stateville Correctional Center on October 5, 1983. On January 23, 1984, he was arrested for the alleged possession of cocaine and sent to Cook County Jail. He was served on February 7, 1984 with a notice charging violation of his parole conditions. A preliminary hearing was held on March 1, 1984 and the hearing officer found probable cause to believe that Faheem had violated his parole. Faheem was not considered for bail. The final parole revocation hearing was held on February 5, 1985, over one year after his arrest. Faheem was found to have been in violation of his parole.

Faheem's lawsuit is directed primarily at three features of the parole revocation system. First, he alleges that defendants customarily deny parolees the opportunity to present their own witnesses or to cross-examine adverse witnesses at the preliminary parole revocation hearing. Second, Faheem challenges the practice of delaying final parole revocation hearings until after disposition of the underlying criminal action. This delay often amounts to many months. Third, he claims that defendants wrongfully deny bail to alleged parole violators.[6]

## C. Earlier Opinion

In an earlier opinion, *Faheem-el v. Klincar*, 600 F.Supp. 1029 (N.D.Ill.1984), this court cut through some of the jurisprudential underbrush and weighed the merits of two of plaintiff's three claims as well. The court first identified which of plaintiff's claims were properly brought in the habeas action, for which state remedies had not been exhausted, and which could be brought in a civil rights action under 42 U.S.C. § 1983. *Id.* at 1032–34. After determining that plaintiff had cleared the Article III mootness and standing hurdles, *id.* at 1034–1036, the court certified a class consisting of persons who are presently or will be in the future incarcerated for parole violations without the opportunity for a proper preliminary parole revocation hearing, or an opportunity for release on bail pending a final revocation hearing. *Id.* at 1037–38.

Turning to the merits of the case, the court held that plaintiff was likely to succeed on its claim that the preliminary revocation hearings do not comport with due process. Similarly, it held that plaintiff was likely to show that the policy of putting off final revocation hearings until after resolution of the underlying criminal charge results in delays of unconstitutional length. Because the other prerequisites to a preliminary injunction were met,[7] the court granted plaintiff's preliminary relief on the two claims. A December 19, 1984 order enjoined defendant from "continuing their practice denying parolees their right to call witnesses, to present evidence and to confront and to cross examine adverse witnesses at preliminary parole revocation hearings." The order also directed defendants to hold, at the request of parolees, final parole revocation hearings before a final disposition of the underlying criminal charge, unless a final disposition is reached within 120 days. The court delayed ruling on whether defendants should be preliminarily enjoined from refusing to allow bail to alleged parole violators and requested

---

6. Plaintiff also alleges that defendants wrongfully deny parolees credit for time served in jail awaiting a final parole revocation hearing. This issue has yet to be fully addressed by the parties.

7. The traditional test for granting a preliminary injunction consists of four parts: (1) whether the plaintiff has at least a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not

issue; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on defendant; and (4) whether the granting of the preliminary injunction will disserve the public interest. *See e.g. Martin v. Helstad*, 699 F.2d 387, 389 (7th Cir. 1983). For an exhaustive discussion of the standards for granting a preliminary injunction *see Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984).

further briefing on this issue by the parties.

Since then the parties have briefed the bail issue. Plaintiff has also filed a petition for rule to show cause for why the defendants should not be held in contempt of court for violations of the December 19, 1984 order. In the April 1, 1985 petition plaintiff alleges that the defendants had yet to conduct a single hearing in which the parolee was allowed to call witnesses. Plaintiff also alleges that defendants have a policy of refusing to subpoena police officers who have witnessed and reported alleged parole violations and that this policy denies parolees their right to call witnesses. Plaintiff has also filed a motion for summary judgment that tracks the issues upon which this court granted preliminary injunctive relief.

## II. BAIL

Illinois makes no provision for releasing alleged parole violators on bail. *See People ex rel. Tucker v. Kotsos*, 68 Ill.2d 88, 11 Ill.Dec. 295, 368 N.E.2d 903 (1977). Defendants do not consider any alleged parole violators for bail. This practice effectively denies bail to all alleged parole violators, regardless of the circumstances of the crime for which they were sentenced and of the alleged breach of parole conditions and regardless of the likelihood that they will flee or that they pose a danger to the community. In marked contrast, Illinois law expressly provides that probationers who have allegedly violated the conditions of their probation are entitled to bail pending a probation revocation hearing. *See* Ill.Rev.Stat. ch. 38, ¶ 1005–6–4(b).[8]

Defendants' practice of refusing to grant bail to alleged parole violators raises three constitutional questions: first, whether this practice impinges upon some Eighth Amendment right to bail; second, whether it represents a denial of liberty without due process in violation of the Fourteenth Amendment; and, third, whether denying bail to alleged parole violators, but granting it to alleged probation violators, constitutes a denial of equal protection. At this juncture in the case the court must determine if plaintiff has a reasonable likelihood of success on the merits of any of these issues, such that preliminary injunctive relief might be appropriate.

### A. Eighth Amendment

■ The Eighth Amendment reads, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.[9] In recent years there has been a lively debate over whether each person has an Eighth Amendment right to bail. One camp interprets the excessive bail clause as a limit only upon the judiciary that leaves legislatures free to prescribe what offenses are bailable. *See e.g.,* Meyer, *Constitutionality of Pretrial Detention* (Pt. I), 60 Geo.L.J. 1140 (1972); Duker, *The Right to Bail: A Historical Inquiry*, 42 Alb.L.Rev. 33 (1977); Mitchell, *Bail Reform and the Constitutionality of Pretrial Detention*, 55 Va.L.Rev. 1223 (1969); *see also United States v. Edwards*, 430 A.2d 1321 (D.C.App.1981) (*en banc*), *cert. denied* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). The other camp interprets the clause more broadly as a proscription against not only excessive bail but also against the denial of bail altogether. It reasons that legislatures should not be able to do what the courts are prohibited from doing: deny bail unreasonably. *See*

---

**8.** Paragraph 1005–6–4(b) reads in relevant part:

The court shall conduct a hearing of the alleged violation. The court shall admit the offender to bail pending the hearing unless the alleged violation is itself a criminal offense in which case the offender shall be admitted to bail on such terms as are provided in [Ill.Rev.Stat. ch. 38, ¶ 1001 *et seq.*].

The right to bail, pending a revocation hearing, also extends to individuals who have been sentenced to conditional discharge or supervision. *See* Ill.Rev.Stat. ch. 38, ¶ 1005–6–4.1(b).

**9.** The excessive bail clause is applicable to the states through the Fourteenth Amendment. *See Hunt v. Roth*, 648 F.2d 1148, 1155–56 (8th Cir. 1981), *vacated as moot sub nom Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (*per curiam*).

*e.g.*, Foote, *The Coming Constitutional Crises in Bail* (Pt. I), 113 U.Pa.L.Rev. 959 (1965); Tribe, *An Ounce of Detention: Preventive Justice in the World of John Mitchell*, 56 Va.L.Rev. 371 (1970); *see also U.S. ex rel. Goodman v. Kehl*, 456 F.2d 863, 868 (2d Cir.1972) (Friendly, J.). *See generally* Note, *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum.L.Rev. 328 (1982) (summarizing positions and arguing for expansive interpretation).

The terrain of this debate stretches back through hundreds of years of legal history. Two historical developments factor large in the debate. First, the bail clause can be traced back to the English Bill of Rights of 1689, Clause 10, which did not create an absolute right to bail but rather was designed to end the practice of circumventing the Habeas Corpus Act of 1679 by setting excessively high bail. Second, the same Congress that passed the Bill of Rights enacted the Judiciary Act of 1789, which granted an explicit right to bail, except in capital cases. Judiciary Act of 1789, ch. 20, § 33, 1 Stat. 73, 91.

These two developments are facially consistent with the view that the excessive bail clause creates no right to bail and that there is an absolute legislative prerogative to deem offenses nonbailable. As is evident from the language of the Eighth Amendment, the argument goes, the framers intended the excessive bail clause to conform to English practice and did not create an expansive and unprecedented right to bail. Congress' enactment of the right-to-bail provision in the Judiciary Act of 1789 is interpreted as demonstrating that the Constitution guarantees no one a right to bail. Finally, the exclusion of capital crimes from the right-to-bail provision in the Judiciary Act is supposed to reflect the unbridled legislative power to define what offenses are bailable.

■ This argument is overstated. Simply because the historical record does not support an absolute right to bail does not mean that legislatures have absolute discretion in determining what offenses are bailable. The historical record also reveals that bail has been consistently viewed as a crucial bulwark against governmental extinguishment of individual liberty. As the Supreme Court stated:

> This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

*Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951) (citation omitted). *See also Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971), *reh'g denied* 405 U.S. 948, 92 S.Ct. 930, 30 L.Ed.2d 818 (1972) ("[B]ail is .... basic to our system of law"). Some colonies had, and most states have, constitutional provisions that guarantee bail for all criminal defendants, except those charged with the most serious crimes.[10] The exclusion of capital crimes and, less commonly, crimes carrying potential life sentences, does not necessarily indicate that legislatures have unbridled power to define any offense nonbailable. Bail was designed to ensure the presence of the accused at trial. Defendants facing a death sentence may be so prone to flight that a *per se* denial of bail is appropriate.

The historical record, then, is not consistent with an absolute right to bail. The record is clear, however, that bail has been of central importance in Anglo-American

---

**10.** The Illinois Constitution reads in relevant part:

> All persons shall be bailable by sufficient sureties, except for capital offenses and offenses for which a sentence of life imprisonment may be imposed as a consequence of conviction where the proof is evident or the presumption great.

Ill. Const. Art. I, Sec. 9. *See also* Note, The Eighth Amendment and the Right to Bail: Historical Perspectives, 82 Colum.L.Rev. 328, 353 n. 172 (1982) (listing 40 states guaranteeing right to bail in their constitutions).

jurisprudence. Bail protects a variety of constitutional rights by shielding citizens from punishment before trial and by permitting them to effectively defend themselves against criminal charges. Consequently, there is no reason to suppose from the historical record that the Eighth Amendment is so toothless that every legislative limit on the availability of bail will pass constitutional muster.

While the Supreme Court has never addressed directly whether there is an absolute right to bail, indications are that the Court is unsympathetic to such a position. In *Stack v. Boyle*, 342 U.S. 1, 3, 72 S.Ct. 1, 2, 96 L.Ed. 1 (1951), the Court emphasized the importance of bail but did not indicate that every defendant had an absolute right to bail. Later in the same term, in *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547, *reh'g denied* 343 U.S. 988, 72 S.Ct. 1069, 96 L.Ed. 1735 (1952), the Court adopted a narrow interpretation of the bail clause.[11] More recently, the Court upheld a preventive detention scheme for juvenile offenders deemed to pose a serious risk of committing a crime before an adjudication of deliquency could be made. *Schall v. Martin*, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). *Schall* did not treat the Eighth Amendment right to bail, and involved the detention of juveniles rather than adults, a fact of crucial importance to the Court. Yet, the Court's willingness to embrace a preventive detention scheme, especially in light of substantial evidence that future criminal conduct cannot be reliably predicted, suggests that it would not be disposed in favor of an absolute right to bail.

In upholding the constitutionality of preventing detention provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, lower courts have held that there is no Eighth Amendment right to bail. *See e.g. United States v. Hazzard*, 598 F.Supp. 1442, 1448–1450 (N.D.Ill.1984). *See also United States v. DiVarco*, 602 F.Supp. 1029, 1033–34 (N.D.Ill.1985). Courts have also held, with some consistency, that parolees have no Eighth Amendment right to bail pending a parole revocation hearing. *See Luther v. Molina*, 627 F.2d 71, 76 n. 10 (7th Cir.1980) (*dictum*). *See also Galante v. Warden*, 573 F.2d 707, 708 (2d Cir.1977); *In re Whitney*, 421 F.2d 337 (1st Cir.1970); *United States ex rel. Taylor v. Brierton*, 458 F.Supp. 1171 (N.D.Ill.1978). In sum, the clear weight of the case law is that individuals generally, and parolees in particular, do not have an absolute right to bail.

Both parties stop their argument at this point. If the court ended its analysis where the parties have, it would be compelled to agree with defendants and hold that Faheem, like every alleged parole violator, has no Eighth Amendment right to bail. This case differs radically, however, from almost every other case that has raised the Eighth Amendment right-to-bail issue. The court's Eighth Amendment analysis must differ accordingly.

This case represents a challenge to the defendants' denial of bail to each and every alleged parole violator, regardless of the nature of his conviction or the alleged criminal activity that prompted his arrest.[12]

---

**11.** The *Carlson* Court's discussion is as follows:
> The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country. Thus, in criminal cases bail is not compulsory where the punishment may be death. Indeed, the

> very language of the amendment fails to say all arrests must be bailable.

*Carlson v. Langdon*, 342 U.S. 524, 545–46, 72 S.Ct. 525, 536–37, 96 L.Ed. 547 *reh'g denied* 343 U.S. 988, 72 S.Ct. 1069, 96 L.Ed. 1375 (1952) (footnotes omitted). The *Carlson* plaintiffs were being held in custody without bail as alleged active alien communists, pending deportation under the Internal Security Act.

**12.** The court has certified a class consisting of parolees facing parole revocations because of their rearrests on criminal charges. The range of individual circumstances increases markedly when one considers as well parolees who have

Faheem's real complaint, and the real complaint of the class, is not that parolees have no absolute right to bail but that they are absolutely barred from obtaining bail regardless of the circumstances. The paroled murderer who kills again while on parole is denied bail. The individual who is paroled after serving time for a class 4 felony (*e.g.*, transmitting a false fire alarm), and is rearrested for allegedly committing a misdemeanor, is also denied bail. There are no exceptions, no standards for bail eligibility, and no opportunity for alleged parole violators to attempt to demonstrate that bail would be appropriate in their case.

Almost all right-to-bail cases, in contrast, raise the issue in the context of a single individual challenging a denial of bail. In light of the language and history of the bail clause, courts are understandably reluctant to recognize an absolute right to bail in a case brought by a single individual. The scholarly debate on the bail clause has similarly focused on the question whether there is an absolute right to bail and not on whether bail can be denied absolutely to members of a heterogeneous class of offenders.

There is another, crucially important, distinguishing feature. The cases that have announced that there is no right to bail have been determining in effect the constitutionality of statutory schemes that allowed bail in some circumstances but denied it in others. For example, the Bail Reform Act of 1984 permits individuals subject to pretrial detention without bail to demonstrate that such detention is unwarranted. *See* 18 U.S.C. § 3142. *See also* 18 U.S.C. § 3143 (standards for bail pending appeal of conviction). In *Luther v. Moli-*

*na*, 627 F.2d 71 (7th Cir.1980), where the Seventh Circuit announced that alleged parole violators had no right to bail, the court stated it was nonetheless hopeful that the Federal Parole Commission did not have a presumption or policy against releasing parolees before their final revocation hearings. *Id.* at 75 n. 4. The statute at issue in that case provided that after a preliminary hearing alleged parole violators could be released to parole pending a final revocation hearing if certain statutory conditions were satisfied. 18 U.S.C. § 4214(a)(1)(A).[13] The statute involved in *Carlson* gave the Attorney General discretion to release active alien communists on bail, pending a determination of their deportability. 342 U.S. at 525 n. 5. In fact, bail had been allowed in a large majority of similar cases. *Id.* 342 U.S. at 542, 72 S.Ct. at 535.

The so-called "right-to-bail" cases thus have been far less sweeping than generally assumed. They have only established that not every individual is entitled to bail because statutory schemes that grant bail to some individuals, while denying bail to others, are not *per se* unconstitutional. Sweeping *dicta* to the contrary, these cases cannot fairly be interpreted as holding that the Eighth Amendment places no limits on the legislature's power to sharply limit bail eligibility or, as in this case, to eliminate bail altogether.

■ A blanket denial of bail to parole violators is inconsistent with the Eighth Amendment. Bail plays a crucial role in securing basic constitutionally-protected liberties. *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971). Reincarceration often has drastic detrimental effects on a parolee. The de-

---

not been rearrested but whose parole is subject to revocation because of the violation of other conditions. It is unclear if such parolees are subject to reincarceration.

**13.** 18 U.S.C. § 4214(a)(1)(A)(i-iv) provides that if the Parole Commission finds probable cause to believe that a parolee has violated parole conditions, it may nonetheless restore the individual to parole pending the revocation hearing, if

(i) continuation of revocation proceedings is not warranted; or

(ii) incarceration of the parolee pending further revocation proceedings is not warranted by the alleged frequency or seriousness of such violation or violations;

(iii) the parolee is not likely to fail to appear for further proceedings; and

(iv) the parolee does not constitute a danger to himself or others.

fendants have not suggested that alleged parole violators are so likely to flee or to pose a threat to the community that a blanket denial of bail is necessary. Given the vast range of individual circumstances of alleged parole violators, it is unlikely that the defendants could make such a showing.

This case is akin to *Hunt v. Roth,* 648 F.2d 1148 (8th Cir.1981), *vacated as moot sub nom Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (*per curiam* ). The *Hunt* court struck down as violative of the Eighth Amendment a provision in the Nebraska Constitution that denied bail to all individuals charged with certain kinds of sexual offenses. After a thorough analysis of the Eighth Amendment issues, the Court concluded that:

> The fatal flaw in the Nebraska constitutional amendment is that the state has created an irrebuttable presumption that every individual charged with this particular offense is incapable of assuring his appearance by conditioning it upon reasonable bail or is too dangerous to be granted release. The constitutional protections involved in the grant of pretrial release by bail are too fundamental to foreclose by arbitrary state decree. The state may be free to consider the nature of the charge and the degree of proof in granting or denying bail but it cannot give these factors conclusive force.

*Id.* at 1164–65 (footnote omitted).[14]

This court recognizes that alleged parole violators are not in the same position as those only charged with crimes. Parolees have already been convicted of a crime. They are also still in the form of custody, albeit it one much less restrictive than in prison. *See Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984) (juveniles always in some form of custody).

Nevertheless, while these important differences may properly factor in a bailelibility decision, they are not so compelling as to justify a blanket denial of bail to all parolees. Because the defendants' practice of denying bail to all alleged parole violators appears fatally flawed under the Eighth Amendment, plaintiff has a reasonable likelihood of success on the merits of this claim.

**B. Due Process**

■ In *Luther,* the Seventh Circuit recognized that the denial of bail to a parolee pending the final revocation hearing might in some circumstances violate due process rights. 627 F.2d at 76. *See also United States ex rel. Napoli v. State of New York,* 379 F.Supp. 603, 605–606 (E.D.N.Y.1974). Here plaintiff is challenging a parole revocation system that vests no one with discretion to determine bail elibility, but rather denies bail as a matter of course to every alleged parole violator. The inherent arbitariness of such a system offends the due process clause of the Fourteenth Amendment.

■ Parolees have a substantial liberty interest in their parolee status, even though parole is but a variation on imprisonment, and the liberty of the parolee is conditional. *Morrissey v. Brewer,* 408 U.S. 471, 480–82, 92 S.Ct. 2593, 2599–2600, 33 L.Ed.2d 484 (1972). Termination of parole inflicts a grievous loss on the parolee. *Id.* at 482, 92 S.Ct. at 2600. Reincarceration forces the parolee to relinquish his freedom and his ties to family, employment and community. The reincarcerated parolee is also subject to the many physical and psychological dangers of imprisonment. Typically, many weeks and even many months separate the preliminary and final parole revocation hearings.[15]

---

**14.** It is clear from the remainder of the opinion that the *Hunt* court recognized that there were certain limited exceptions, such as capital crimes, to the rule that bail could not be denied outright to classes of individuals. *See* 648 F.2d at 1160.

**15.** The fact that many alleged parole violators opt to delay their final revocation hearing until after disposition of the underlying criminal charges, *see Faheem-el,* 600 F.Supp. at 1039–40, does not diminish the prejudicial impact of reincarceration. The Seventh Circuit has noted that even a few days of incarceration is extremely disruptive. *Luther v. Molina,* 627 F.2d 71, 74 n.

The individual circumstances of the members of plaintiff class differ markedly. At one extreme are paroled murderers who are accused of a subsequent killing. At the other extreme are individuals paroled after serving time for a class 4 felony and who are arrested for allegedly committing a misdemeanor.

Similarly, the final parole revocation hearings lead to a wide range of outcomes. The Prisoner Review Board may "either revoke parole ... or order the person's [parole] term continued with or without modification or enlargement of the conditions." Ill.Rev.Stat. ch. 38, ¶ 1003–3–9(f). A substantial percentage of final revocation hearings do not result in the revocation of parole. In 1983, 11 per cent of the parolees who had been sentenced for another offense were nevertheless continued on parole. Illinois Prisoner Review Board, *6th Annual Report*, 1, 18. Revocation occurred in only 25 per cent of the cases where the alleged parole violator had not been sentenced for another crime.[16] Many parolees arrested for a subsequent offense are not convicted and sentenced. Consequently, many members of the plaintiff class will be released back to parole as a result of their final revocation hearing.

Finally, the traditional function of bail has been to ensure the presence of the accused at trial. Recent statutory schemes such as the Bail Reform Act of 1984 have added danger to the community as a factor to be taken into account in some situations before granting bail. Defendants have failed to advance any evidence that alleged parole violators pose a risk of flight or danger to the community significantly higher than other individuals who are entitled to bail.

This is not a typical case whether the question is whether the process offered by defendants is that constitutionally due plaintiff. *See e.g. Schall v. Martin*, 104

S.Ct. at 2403; *United States v. Hazzard*, 598 F.Supp. 1442, 1450–1452 (N.D.Ill.1984). Rather, the question is whether the defendants can deny any process whatsoever to parolees before reincarcerating them for long periods pending a final revocation hearing.

A blanket denial of bail fails to comport with due process for three reasons. First, it gives no protection whatsoever to the parolee's substantial interest. Bail has historically protected the liberty interest of those facing the charge of wrongdoing. Defendants' policy extinguishes that liberty interest without giving parolees any opportunity to be heard why their reincarceration is unwarranted. Second, as applied to the broadly heterogeneous group of parolees, the policy smacks of arbitrariness because it treats in the same manner people situated vastly differently. For example, the paroled class 4 felon who is arrested but ultimately not convicted of a minor crime, who poses no risk of flight or threat to the community, and who is ultimately exonerated by the Prisoner Review Board, has the same (100 per cent) chance of reincarceration as a paroled murderer who is ultimately convicted of another murder, who poses a risk of flight and a threat of harm to the community, and whose parole is ultimately revoked.

Third, the defendants have advanced no reason for why alleged parole violators are so unique as a class that the automatic extinguishment of the liberty of every alleged parole violator pending a final revocation hearing is necessary. The distinguishing feature of alleged parole violators is their past conviction. As this court has already noted, *supra* pp. 1318–1319, while past conviction is a factor that may properly be considered in determining bail eligibility, past conviction alone is a common characteristic wholly insufficient

---

3 (7th Cir.1980). Even parolees who opt for an early hearing typically face weeks of incarceration.

16. In all, 32 per cent of alleged parole violators are continued on parole as a result of the final

revocation hearing. *See* Prisoner Review Board, 6th Annual Report, 1, 18. Almost 10 per cent of the alleged parole violators who were not sentenced for a subsequent crime were apparently exonerated. *Id.* at 5.

by itself to justify denying bail to all alleged parole violators.

■ Plaintiff has a reasonable likelihood of success on the merits of his due process challenge to the denial of bail to all alleged parole violators.

### C. Equal Protection

In *Luther* the Seventh Circuit also stated that a possible constitutional objection to the denial of bail to an alleged parole violator was "a claim that it would violate equal protection to deny bail to parolees awaiting revocation while making it available to probationers." 627 F.2d at 76. Plaintiff mounts such a challenge to defendants' practice of denying bail to every alleged parole violator, while permitting probationers to be released on bail pending a final hearing on probation revocation.

■ The equal protection clause of the Fourteenth Amendment provides that no state shall "deny any person within its jurisdiction equal protection of the laws." It is essentially a directive that all persons similarly situated should be treated alike. *See generally City of Cleburne, Texas v. Cleburne Living Center,* —— U.S. ——, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Courts will apply strict scrutiny to legislative or official state action that infringes upon a fundamental right or discriminates on the basis of suspect categories such as race, religion or national origin. Otherwise, state action or legislation will pass constitutional muster if differential treatment of similarly situated persons is rationally related to a legitimate state interest.

This court has already indicated that defendants' policy may infringe upon the Eighth and Fourteenth Amendment rights of alleged parole violators. To avoid a truncated equal protection analysis, the court will assume that the practice of granting bail to probationers accused of a subsequent crime, while denying bail to

parolees accused of another crime, neither impinges upon a fundamental right nor constitutes potentially invidious discrimination. It will thus apply the rational relationship test.

The Illinois Supreme Court dealt with the present issue in *People ex rel. Tucker v. Kotsos,* 68 Ill.2d 88, 11 Ill.Dec. 295, 368 N.E.2d 903 (1977), finding no constitutional violation, and there begins this court's analysis. A court in this district has adopted the *Kotsos* position. *See United States ex rel. Taylor v. Brierton,* 458 F.Supp. 1171 (N.D.Ill.1978); *but see United States ex rel. Dereczynski v. Longo,* 368 F.Supp. 682 (N.D.Ill.1973), *aff'd* 506 F.2d 1403 (7th Cir. 1974) (Pre-*Kotsos* decision, finding equal protection violation).

The *Kotsos* court identified two distinctions between probationers and parolees as to bail eligibility that were "rationally related to the State's legitimate interest in protecting the public through the incarceration of those for whom incarceration is appropriate, while at the same time not wasting the taxpayers' money and retarding the rehabilitation of offenders through unnecessary incarceration." 11 Ill.Dec. at 300, 368 N.E.2d at 908. First, parolees, unlike probationers, have been originally sentenced to imprisonment. The second distinction identified by the *Kotsos* court was that "[p]robation, however conditioned, is unlike parole, in that the probationer, unlike the parolee, may be released without a subsequent finding of rehabilitation." 11 Ill.Dec. at 300, 368 N.E.2d at 908. Neither of these distinctions, however, justify the radically different treatment of probationers and parolees with regard to bail.

This court does not see how a finding of rehabilitation necessary for the grant of parole makes it more dangerous for a parolee accused of a subsequent crime to be released than for a probationer similarly accused.[17] In fact, a finding by the Prison-

---

17. This court also questions whether a finding of rehabilitation is a prerequisite to a grant of parole. The statutory provision relied upon by the *Kotsos* court provides that the Prisoner Review Board shall not parole an individual if (1)

there is a substantial risk he will not conform to parole conditions, or (2) parole would deprecate the seriousness of his offense or prompt disrespect for the law, or (3) would adversely affect prison discipline. Ill.Rev.Stat. ch. 38, ¶ 1003–3–

er Review Board that a parolee is rehabilitated would seem to mean that parolees will pose less a threat of flight and danger to the community than probationers for whom no finding of rehabilitation is required.

The most obvious distinction between parolees and probationers, and the one relied upon most heavily by the *Kotsos* court, is that parolees but not probationers have been imprisoned. As the *Kotsos* court pointed out, a convicted individual cannot be sentenced to prison for certain crimes unless "(1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or (2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." Ill.Rev.Stat. ch. 38, ¶ 1005–6–1(a).[18] Thus a probationer is on probation because the judge found certain statutory requirements were not sufficiently satisfied to warrant imprisonment.

A prisoner, once eligible for parole, similarly must be allowed out of prison on parole unless certain statutory determinations are made. *See United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185 (7th Cir.1982) (*per curiam*), *cert. denied sub nom., McCombs v. Scott,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). These determinations are that (1) there is a substantial risk that he will not conform to reasonable conditions of parole or (2) his release at that time would deprecate the seriousness of his offense or prompt disrespect for the law. *See* Ill.Rev.Stat. ch. 38, ¶ 1003–3–5(c). These determinations echo the determinations required for a sentence of imprisonment, as they logically should.

This court finds it significant that the same findings that a judge must make to place an individual on probation must be found by the Prisoner Review Board to allow a prisoner to be released on parole. The two mandatory conditions of parole are abidance with all criminal laws, and non-possession of a firearm or other dangerous weapon. Ill.Rev.Stat. ch. 38, ¶ 1003–3–7(a). A finding that an individual eligible for parole will conform to parole conditions is thus the functional equivalent of a finding that probation is appropriate because imprisonment of an individual is not necessary for the protection of the public. In effect, the requirements that must be satisfied before parole is granted cancel all the differences between parolees and probationers that stem from the imprisonment of the former. *Cf. Gagnon v. Scarpelli,* 411 U.S. 778 n. 3, 93 S.Ct. 1756 n. 3, 36 L.Ed.2d 656 (1973) ("revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from revocation of parole").

The only remaining difference between a parolee and a probationer, based on the statutes, is who determines eligibility for parole or probation. A trial judge makes that determination for probationers while the Prisoner Review Board makes it for parolees. This distinction is not rationally related to any difference in treatment regarding bail. A non-judicial body can determine if an alleged parole violator should be released pending a final revocation hearing. At the federal level, for example, the Parole Commission makes such determinations. *See* 18 U.S.C. § 4214(a)(1)(A).

The defendants have stayed within the confines of *Kotsos* when defending the differential treatment of parolees and probationers with respect to bail. They have not identified any unique characteristics of parolees that make them so congenitally unsuited for bail that they, but not probationers, should be denied bail as a matter of

---

5(c). Nowhere is rehabilitation mentioned as a prerequisite to parole. If rehabilitation were not a prerequisite to parole, then the distinction drawn on this basis between probationers and parolees collapses.

**18.** When the *Kotsos* opinion was written, imprisonment rather than probation was also called for if "the offender [was] in need of correctional treatment that can most effectively be provided by a sentence to imprisonment." This provision was deleted from ch. 38, ¶ 1005–6–1(a), in 1978.

course. Such a showing is unlikely, although perhaps there are unique characteristics of parolees, not yet identified, that could affect a bail eligibility decision.

■ However, because parolees and probationers are similarly situated, but treated so differently with respect to bail, and because the defendants have advanced no rational basis for this policy, the court concludes that plaintiff has a reasonable likelihood of success on its equal protection claim.[19]

The court having found the other prerequisites to a preliminary injunction satisfied, *Faheem-el*, 600 F.Supp. at 1041, preliminary injunctive relief is appropriate with respect to the defendants' blanket denial of bail to the alleged parole violators.

### III. SUMMARY JUDGMENT

Plaintiff has moved for summary judgment on three issues that implicate his own case as well as the interests of the class. First, he seeks summary judgment in the form of a permanent injunction with respect to the parolee's right to call witnesses at the preliminary hearing. Second, plaintiff alleges that he was prejudiced by the one-year gap between his preliminary and final revocation hearings and seeks an order vacating the Prison Review Board's finding of a parole violation. Third, plaintiff seeks dismissal of the charge against him because defendants violated his right to confront and cross-examine witnesses at the final revocation hearing.

### A. Right to Call Witnesses

■ Defendants do not contest the proposition that alleged parole violators are entitled to call witnesses at the preliminary parole revocation hearing. Such an argument would run headlong into *Morrissey* and this court's earlier opinion. Rather, they argue that their adoption of a policy

permitting parolees to call witnesses at preliminary hearings in response to this court's preliminary injunction order moots the issue. Final injunctive relief, however, is appropriate in these circumstances. There is no way to determine if defendants have voluntarily turned over a new leaf and will permit witnesses at preliminary hearings without the prompting of an injunction, or whether the new policy has resulted only from the issuance of a preliminary injunction. A permanent injunction permits the court to avoid engaging in such speculation. Moreover, defendants' approach would make permanent injunctions superfluous. Defendants are thus permanently enjoined from denying alleged parole violators their constitutionally protected right to call witnesses at preliminary parole revocation hearings.

### B. Prejudicial Delay

■ Plaintiff has advanced evidence that had his final parole revocation hearing been held promptly he could have presented a witness whose testimony would have been exculpatory. He is challenging, in effect, defendants' practice of delaying final revocation hearings until after resolution of the underlying criminal charge. The Seventh Circuit has made clear that the timeliness of a parole revocation hearing cannot be judged using arbitrary guidelines. *See Hanahan v. Luther*, 693 F.2d 629, 634 (7th Cir.1982), *cert. denied* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983). Rather, the court must apply the four factors outlined in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972): the length of delay, the reasons for the delay, defendants' assertions of his right to a speedy hearing, and the prejudice to the individual as a result of the delay.

■ The fact-specific nature of the *Barker* inquiry does not lend itself to sum-

---

**19.** It should be noted that the court's equal protection discussion is most applicable to those individuals like the plaintiff who were sentenced before the determinate sentencing system went into effect. This approach also may be relevant to those who are on mandatory parole after the determinate sentence, to the extent that the legislature (and the sentencing judge) determined that after serving a fixed sentence the individual would be able to conform to parole conditions and would not pose a threat to the public.

mary disposition of the class claim. Faheem's case raises different problems. He did not seek to enforce his right to a prompt final revocation hearing through mandamus, even though this avenue was available. *See People ex rel. Tucker v. Kotsos,* 11 Ill.Dec. at 300, 368 N.E.2d at 908. This remedial approach is, of course, futile at this point, thus satisfying defendants' exhaustion concerns. Nevertheless, a question of material fact remains as to what portion of the delay, if any, fairly can be attributed to Faheem.

## C. Confrontation and Cross Examination Rights at Final Hearing

At the final parole revocation hearing the Prisoner Review Board found that Faheem had violated his parole terms on the basis of a police report. The reporting officer was not present for cross-examination at the hearing. When a final hearing is held before trial the Prisoner Review Board as a matter of practice adopts the contents of the police report in every instance, regardless of evidence to the contrary presented by the parolee. The Board also does not take steps to ensure that reporting officers are available for cross-examination.

*Morrissey v. Brewer* made clear that alleged parole violators have the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing the appearance of the witness, 408 U.S. at 489. The Board made no findings in Faheem's case as to why the reporting police officer should not appear, nor has the Board advanced any reason for its refusal to call police officer witnesses to the final hearings or for its sole reliance upon police reports to the exclusion of other evidence.

The Seventh Circuit has made clear that hearsay evidence bearing substantial indicia of reliability is admissible at a final revocation hearing. *See Egerstaffer v. Is-*

*rael,* 726 F.2d 1231, 1234–35 (7th Cir.1984). Further, if the hearsay evidence bears such indicia, the witnesses need not be called to hearing. *Id.*

Those principles, however, do not sanction defendants' practices. Once again the policy challenged is one which is absolute, without regard to the circumstances of the particular case. As *Egerstaffer v. Israel, supra,* makes clear, there may well be good cause not to call a particular witness and hearsay may well bear such indicia of reliability that reliance upon it is appropriate.[20] There is, however, no absolute presumption that police reports are absolutely reliable, nor, reasonably, can there be. Indeed, they cannot be introduced as evidence in the trial of the substantive offense. *Morrissey* makes no exception for police officers to the rule that absent good cause adverse witnesses must be made available to the alleged parole violator for cross-examination. Whether or not good cause has been shown and whether or not a hearsay report bears sufficient indicia of reliability are individualized determinations which must find sufficient support in the record. Here there has been no determination at all.

Faheem's position that every reporting officer be subject to cross-examination is legally unsupportable. Nevertheless, summary judgment is warranted to the extent that defendants fail to make any determinations as to the reliability of police reports before adopting them wholesale yet deny alleged parole violators the opportunity to confront and cross-examine reporting officers. Faheem is not entitled to the dismissal of the parole violation charge. Rather, he is entitled to a new parole revocation hearing. At that hearing the Board must either produce the reporting officer for cross-examination or make explicit and supported findings that there is good cause for not calling the officer and that the

---

**20.** Parole revocation hearings are more flexible than criminal trials and a wider range of evidence is admissible. *See Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604. Thus, there is no support for the proposition advanced by plaintiff that

police reports should be barred entirely from revocation hearings and reporting police officers thus must be made available for cross-examination at every hearing.

police report is so reliable that, absent cross-examination of the reporting officer, it alone is sufficient to find Faheem in violation of his parole conditions.

## IV. RULE TO SHOW CAUSE

■ The first issue in plaintiff's petition to hold defendants in contempt is whether defendants are preventing alleged parole violators from presenting witnesses at preliminary parole revocation hearings. This issue resists summary disposition because the evidence offered by the parties is conflicting and because defendants' practices are evolving rapidly in response to this lawsuit. Consequently, a hearing will be necessary to resolve this issue.

■ The second issue covers familiar territory. Defendants employ the same practice with respect to police reports and the cross-examination of reporting officers at the preliminary revocation hearing as they do at the final hearing. *Morrissey* does not suggest that parolees have a significantly different right of cross-examination and confrontation at the preliminary hearing vis-a-vis the final hearing. Thus, the parties are referred to the court's earlier discussion of cross-examination rights (Sec. III.C) for the proper legal standards. Defendants' compliance with this standard in future preliminary revocation hearings will be presumed.

### Conclusion

Plaintiff's motion for preliminary injunction on the bail issue is granted; plaintiff's motion for summary judgment is granted in part and denied in part. Ruling on the contempt petition is delayed pending a hearing.