Kareem FAHEEM–EL, on his own behalf and on behalf of all others similarly situated, Plaintiff-Appellee,

v.

Paul KLINCAR, Chairman, Illinois Prisoner Review Board, Michael Lane, Director, Illinois Department of Corrections, Harold Thomas, Superintendent, Adult Community Services, Defendants-Appellants.

No. 85–3008.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1986.

Decided March 18, 1987.

As Amended May 8, 1987.

462

Imela R. Terrazino, Office of Atty. Gen. of Ill., Chicago, Ill., for defendants-appellants.

Thomas Peters, Murphy Peters David & O'Brien, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and GORDON, Senior District Judge.*

CUMMINGS, Circuit Judge.

We are asked whether, consistent with the Due Process Clause of the Fourteenth Amendment, a state may deny every parolee who is arrested on a new criminal charge any consideration for release prior to the final revocation hearing. In *Morris-*

---

* The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

sey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 the Supreme Court decided that parolees have a significant liberty interest in maintaining their conditional freedom. Thus the Court held that the Due Process Clause requires certain procedures including hearings prior to revocation of parole but it declined to hold that the full panoply of rights due a defendant in a criminal proceeding applied in the parole-revocation context.

Of the many issues in this lawsuit, this interlocutory appeal only concerns the plaintiff's challenge to Illinois' blanket denial of bail to arrested parole violators awaiting a final revocation hearing. The district court had jurisdiction of this 42 U.S.C. § 1983 action under 28 U.S.C. § 1343(a)(3), and our jurisdiction over that court's interlocutory order is under 28 U.S.C. § 1292(a)(1). The district court awarded the plaintiff class, those detained pending final revocation hearings on new criminal charges, preliminary injunctive relief requiring that class members be considered for release on bail. We affirm that decision as modified herein.

# I

This case has its inception in the Supreme Court's landmark decision of *Morrissey v. Brewer*. That case held that parolees have a liberty interest that falls within the protection of the Due Process Clause. 408 U.S. at 482, 92 S.Ct. at 2600. The Court, concluding that "the interest of both State and parolee will be furthered by an effective but informal hearing" (at 484–85, 92 S.Ct. at 2601–02), divided the parole-revocation process into two stages: first, the arrest of the parolee and the preliminary revocation hearing, and second, the final revocation hearing. In the first stage, an independent decisionmaker, who need not be a judicial officer, must hold a hearing "at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest" to determine "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions" (at 485, 92 S.Ct. at 2602). The parolee must be given notice of the hearing, its purpose, and the alleged parole violations (at 486–87, 92 S.Ct. at 2602–03). The Court specified the minimum procedural requirements for this first hearing:

At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

408 U.S. at 487, 92 S.Ct. at 2603. The hearing officer is supposed to compile a summary of "the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position" and to state the reasons for his decision and the determinative evidence. *Id.* (citing *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287).

In the second stage of the revocation process, the Court required the state to provide within a "reasonable time" after the parolee is arrested—a two-month period did not seem unreasonable—a hearing which "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation" (408 U.S. at 488, 92 S.Ct. 2603). The parolee can present arguments and evidence controverting the alleged violations of the conditions of parole and claiming that those violations do not warrant revocation. *Id.* The opinion listed the minimum due process requirements as including:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 489, 92 S.Ct. at 2604. The Court also stressed that the final revoca-

tion hearing, although determining the fate of the parolee's liberty interest, is not "a criminal prosecution in any sense" and that the traditional rules of evidence may be relaxed. *Id.* It declined to decide if the parolee could be assisted by retained or appointed counsel. *Id.* In the later decision of *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 it was held that the state had to provide appointed counsel in some parole and probation revocation cases, such as when the parolee makes a colorable claim that he or she did not commit the alleged violation or when his or her reasons against revocation are complex, and the *Gagnon* Court concluded that in every case when a parolee's request for counsel is refused, the grounds for refusal must be stated in the record. *Id.* at 790–91, 93 S.Ct. at 1763–64.[1]

The Illinois procedures for parole revocation track in form the prescriptions of *Morrissey.* Illinois has established the Prisoner Review Board (the "Board"), which is responsible for administering parole and mandatory supervised release and the revocation process. By statute, a parolee is entitled to a preliminary and a final revocation hearing; the latter must be heard by at least one member of the Board and decided by a majority vote of a panel of at least three members of the Board. Ill.Rev. Stat. ch. 38, ¶ 1003–3–9(c) to (e). The Board has authority to revoke parole or to order parole continued with or without modifying the conditions of parole. *Id.* at ¶ 1003–3–9(f). The regulations of the Board provide for the minimum procedural requirements established by *Morrissey.* See Ill.Admin.Code tit. 20, §§ 1610.140, 1610.150. The Board's regulations also provide a parolee with the right to be represented by retained counsel at the preliminary and final revocation hearings. *Id.* at § 1610.140(c). Finally, the regulations require that the preliminary hearing be held "within 10 days of the parolee's apprehension unless continued by the hearing officer for up to an additional two weeks to permit the production of witnesses or materials relevant to the hearing." *Id.* at § 1610.140(b)(3).

Notwithstanding the congruence of the Illinois parole-revocation procedures with the constitutional minimum requirements articulated in *Morrissey,* the plaintiff herein, Kareem Faheem-El, also known as Lawrence Griffin, discovered that the state's observance was in word but not deed. The plaintiff, who was paroled after serving ten years for a murder conviction, was arrested on January 23, 1984, for alleged possession of three grams of cocaine and sent to Cook County jail. The record indicates that on that same day a warrant was issued by an officer of the Department of Corrections and was received by an employee of the Chicago Police Department. The warrant ordered that the plaintiff be held for delivery to the Department of Corrections. It was not until day 16 of his confinement, on February 7, 1984, that Faheem-El was served with notice charging violation of his parole conditions. In contravention of the Board's own regulations, Faheem-El was confined for almost six weeks after his arrest without receiving a preliminary revocation hearing, which finally took place on March 1, 1984. The plaintiff claimed, and the report of the hearing officer supports the plaintiff's claim, that he attempted to present the testimony of an eyewitness who allegedly could exonerate him of the drug-possession charge but was denied that request. Plaintiff alleged that he was not allowed to cross-examine the state's witnesses, despite the appropriateness of such under *Morrissey* and the Board's own regulations. The hearing officer found that probable cause existed to believe that Faheem-El violated a condition of his parole and he was held in jail pending his final revocation hearing.

Over one year after his arrest and confinement, Faheem-El received a final revocation hearing on February 5, 1985. Plaintiff filed in March of 1984 this suit seeking *inter alia* a bail hearing. The plaintiff was never considered for bail during the eleven-month period while he waited in jail for a final revocation hearing, although the underlying offense that he was charged with is bailable under Illinois law. At the final revocation hearing, Faheem-El was

---

**1.** The opinion of the Court was by Justice Powell. Only Justice Douglas dissented in part because he thought that the Court should have required counsel to be provided for Gagnon, given the particular facts of his case, rather than leaving the issue for initial determination by the Board.

found to be in violation of his parole. The record does not indicate whether his parole was revoked.

Faheem-El brought this class action on March 27, 1984, about three weeks after his preliminary revocation hearing. He challenged the defendants' policies of (1) customarily refusing to allow parolees to present witnesses or to cross-examine adverse witnesses at the preliminary revocation hearing, (2) delaying final revocation hearings until after disposition of the underlying criminal charge, although this delay may amount to many months, (3) denying parolees credit for time spent in jail awaiting their final revocation hearing, and (4) refusing to consider alleged parole violators for bail pending their final revocation hearing.

The district court's first opinion mostly dealt with procedural issues in the case. The court dismissed the habeas claims because of the plaintiff's failure to exhaust his state remedies but retained jurisdiction over the plaintiff's § 1983 claims. *Faheem-El v. Klincar*, 600 F.Supp. 1029, 1032–34 (N.D.Ill.1984).[2] On the issue of class certification, the court held that Article III concerns of standing and mootness as well as the requirements of Rule 23 were satisfied here and thus a class action was appropriate. *Id.* at 1034–1038. On the bail issue, which is the subject of this interlocutory appeal, the district court certified a state-wide class of parolees facing parole-revocation proceedings because of their arrest on new criminal charges. *Id.* at 1038; see *Faheem-El v. Klincar*, 620 F.Supp. 1308, 1316 n. 12 (N.D.Ill.1985). On the substantive issues, the court preliminarily enjoined the defendants from refusing to allow parolees to present witnesses and confront and cross-examine adverse witnesses at the preliminary revocation hearing. 600 F.Supp. at 1038–39; see Order for Prelim. Inj. (Dec. 19, 1984) (Moran, J.).

The district court also granted a preliminary injunction against the defendants' policy of delaying the final revocation hearing until after the trial on the underlying criminal charges. 600 F.Supp. at 1039–41; see Order for Prelim. Inj. (Dec. 19, 1984) (Moran, J.). The district court ordered further briefing on the bail issue. 600 F.Supp. at 1039.

In its second opinion the district court granted summary judgment and entered a permanent injunction on the plaintiff's challenge to the preliminary revocation hearing procedures. 620 F.Supp. at 1322. Judge Moran ordered the Board to give Faheem-El a new final revocation hearing employing procedures that comported with the requirements of *Morrissey*. *Id.* at 1323–24.

The district court also addressed the bail issue in its second opinion. The court found that the Illinois statutes, as interpreted by the Illinois Supreme Court, do not allow parolees to be considered for release on bail pending the final revocation hearing. *Id.* at 1314. In a thorough and thoughtful opinion, Judge Moran ruled that the plaintiff class had a reasonable likelihood of success on all three of its legal challenges to Illinois' policy of a blanket denial of bail to parolees. First, the court held that although the Eighth Amendment does not guarantee an individual a right to be released on bail, it probably does prevent a blanket denial of consideration for bail, with limited exceptions such as capital cases. *Id.* at 1314–18. The court also found that the denial of consideration of arrested parolees for bail violated the Fourteenth Amendment's Equal Protection Clause, even employing only a rational basis standard of review, because the judge found that there did not seem to be any distinctions between arrested probationers, who can be considered for bail, and arrested parolees that were rationally related to

---

**2.** The district court's decision to sever the habeas claims and retain jurisdiction over the § 1983 claims is consonant with *Wolff v. McDonnell*, 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935. See *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 681–82 (9th Cir.1984). The plaintiff's challenge to Illinois' policy of denying all parolees any consideration for release pending the final revocation hearing was properly brought as a § 1983 action. See *Gerstein v. Pugh*, 420 U.S. 103, 107 n. 6, 95 S.Ct. 854, 859 n. 6, 43 L.Ed.2d 54 (lawsuit seeking

injunctive relief requiring state to give arrestees a probable cause determination by a judicial officer was properly brought as a § 1983 action); *Crump v. Lane*, 807 F.2d 1394, 1400–01 (7th Cir.1986) (prisoner can bring § 1983 suit to challenge a condition of confinement, such as "the procedures or the statutory provisions and regulations used by the [parole board] in making [its] decisions," but must bring habeas action to challenge merely the outcome of a particular decision).

the difference in treatment. *Id.* at 1320–22. Finally the court found that the blanket denial of bail probably violates the Fourteenth Amendment's Due Process Clause because it automatically extinguishes the parolees' liberty interest no matter the individual circumstances. *Id.* at 1318–20.[3] Having found that the other grounds for granting a preliminary injunction were satisfied, 620 F.Supp. at 1322; 600 F.Supp. at 1041, the court entered an injunction. The state then took an interlocutory appeal from that part of the decision that granted the plaintiff a preliminary injunction on the bail issue. The case was transferred and the new district judge entered a stay on the preliminary injunction pending this appeal.

## II

Our review of a district court's grant of a preliminary injunction is made easier by the recent articulation of that process in *Lawson Products v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir.1986). The standard for appellate review was set out there as:

> When a court of appeals considers a preliminary injunction order ... the factual determinations are reviewed under a clearly erroneous standard and the necessary legal conclusions are given *de novo* review.... However, the ultimate evaluation and balancing of the equitable factors is a highly discretionary decision and one to which this court must give substantial deference.

*Id.* at 1437; accord *Zepeda v. United States INS*, 753 F.2d 719, 724–25 (9th Cir. 1983).

In the present case, the state has chosen to challenge only the district court's determination that the plaintiff has a reasonable likelihood of success on each of the three legal grounds asserted to be contrary to Illinois' blanket denial of bail to arrested parolees. See Appellants' Br. 8. Illinois did not argue on appeal that the district judge erred when he decided that the plaintiff satisfied the other four elements for granting a preliminary injunction. *Faheem-El*, 620 F.Supp. at 1322; 600 F.Supp. at 1041; see *Brunswick Corp. v. Jones*, 784 F.2d 271, 273–74 (7th Cir.1986) (discussing the five (sometimes grouped as four)

elements plaintiff must establish to obtain a preliminary injunction.) Furthermore, the factual predicates underlying the grant of the preliminary injunction on the bail issue do not appear to be in dispute. The state agrees with the plaintiff that pursuant to Illinois law all parolees arrested on new criminal charges are denied any consideration for release pending the final revocation hearing. Appellants' Br. 11; see *People ex rel. Tucker v. Kotsos*, 68 Ill.2d 88, 11 Ill.Dec. 295, 368 N.E.2d 903 (1977); *People ex rel. Johnson v. Pate*, 47 Ill.2d 172, 265 N.E.2d 144 (1970), certiorari denied, 402 U.S. 976, 91 S.Ct. 1679, 29 L.Ed.2d 141. The state did not contest in its brief on appeal or at oral argument its own statistics showing that many arrested parolees are in fact returned to parole after the final revocation hearing because either they are found not to have violated their parole, or if they have, it is determined that revocation of parole is not appropriate. See *infra* notes 5–8 and accompanying text; 620 F.Supp. at 1319. Thus neither the facts nor the district judge's balancing of the equitable factors is in dispute.

The Supreme Court has recently observed, "[I]f a District Court's ruling rests solely on a premise as to the applicable rule of law, and the facts are established or of no controlling relevance, that ruling may be reviewed even though the appeal is from the entry of a preliminary injunction." *Thornburgh v. American College of Obstetricians*, —— U.S. ——, 106 S.Ct. 2169, 2177, 90 L.Ed.2d 779 (footnote omitted). In *Thornburgh*, the district court had denied, with the exception of one provision, a motion for a preliminary injunction against a Pennsylvania abortion statute, concluding that the plaintiffs had failed to establish a reasonable likelihood of success on the merits, but the court of appeals proceeded to plenary review of the legal issues in the case and ruled several additional sections of the statute unconstitutional. *Id.* at 2173–75. The Supreme Court held that the court of appeals, although reviewing the denial of a preliminary injunction, had a "full record" before it, "was justified in proceeding to plenary review," and "correctly invalidated the specified provisions" of the statute. *Id.* at 2177, 2185.

---

**3.** Since we hold that the Due Process Clause bars Illinois' blanket denial of conditional release for arrested parolees, there is no need to

reach the merits of plaintiff's Eighth Amendment and equal protection challenges.

Similarly, this Court in upholding a preliminary injunction against a person alleged to be an investment adviser reached the merits of the relevant legal questions that formed the basis of the injunction. *SEC v. Suter,* 732 F.2d 1294 (7th Cir.1984). We stated: "Independently applying the law to the questions raised by Suter, this Court finds that no error has been made with respect to the law. Suter is an investment adviser and subject to regulation by the SEC." *Id.* at 1301; see also *Illinois Corporate Travel v. American Airlines,* 806 F.2d 722, 731 (7th Cir.1986) (Flaum, J., concurring in judgment) (a court of appeals ordinarily limits its review of a preliminary injunction to abuse of discretion, but under *Thornburgh* in some cases it is permissible to rule on the merits of the legal issues). In a decision affirming the denial of a preliminary injunction, the Eleventh Circuit also endorsed the practice of reviewing the legal issues when the facts are not in dispute: "[W]e also conclude that we should decide appellants' statutory construction and due process claims on the merits, since both sides' arguments go to the merits, no facts are at issue and the questions raised are purely legal ones." *Callaway v. Block,* 763 F.2d 1283, 1287 and n. 6 (11th Cir.1985); see *UPS v. United States Postal Serv.,* 615 F.2d 102, 106–07 (3d Cir.1980) (affirming grant of preliminary injunction and deciding the legal question of which waiting period applies to Postal Service rate changes because it was "a question intimately related to the merits of the grant of preliminary injunctive relief" and would not "be seen in any different light after final hearing than before"); *Noel v. Chapman,* 508 F.2d 1023, 1024–25 (2d Cir. 1975), certiorari denied, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (affirming denial of preliminary injunction and deciding the legal questions raised because "the opinion of the court below finally determined the underlying legal and constitutional issues"); *Hurwitz v. Directors Guild of America,* 364 F.2d 67, 70, 76 (2d Cir.1966), certiorari denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 2d 453 (in reviewing denial of motion for preliminary injunction against requirement of signing a loyalty oath, court resolved the only question of fact— whether defendant union had a valid basis for excluding Communists—in defendant's favor and then directed the entry of a permanent injunction in plaintiff's favor be-

cause of the oath's inherent vagueness); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 110.25[1], at 273 (2d ed. 1986).

■ Applying these principles to the present case, we conclude that the constitutionality of Illinois' blanket denial of consideration of arrested parolees for release pending the final revocation hearing is ready for review. The facts are not at issue and the legal questions will not become any clearer after further proceedings. To paraphrase the Eleventh Circuit in *Callaway,* the parties have argued the merits, have extensively briefed the legal issues (and only the legal issues), and have treated the facts as not in dispute (and none appears to be). Consonant with the Supreme Court's decision in *Thornburgh,* considerations of sound judicial administration allow us to decide the merits of the legal issues presented.

### III

Faheem-El's appeal raises questions sounding in procedural and not substantive due process. The difficult question of whether a parolee has a liberty interest cognizable under the Fourteenth Amendment in maintaining his conditional freedom from confinement has already been answered in the affirmative by the Supreme Court. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. In *Morrissey,* the Court employed a Fourteenth Amendment due process rubric to the parole-revocation process. *Id.* at 472, 481, 92 S.Ct. at 2596, 2600. As for whether a liberty interest existed, the Court reiterated its rejection of the right-privilege characterization, stating that the procedural protections constitutionally due depend first on "whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment" and second on "the extent to which an individual will be 'condemned to suffer grievous loss'" *Id.* at 481, 92 S.Ct. at 2600 (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (Frankfurter, J., concurring)). Applying these principles, the Court found a constitutionally cognizable liberty interest:

The liberty of a parolee enables him to do a wide range of things open to persons

who have never been convicted of any crime.... Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Id.* 408 U.S. at 482, 92 S.Ct. at 2600–01 (footnotes omitted).

The issue presented in this appeal is whether the procedures used by Illinois to protect the liberty interest of parolees between their preliminary and final revocation hearings comport with due process. Here we are not concerned with the nature of the confinement, see *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 but rather with the procedural safeguards against erroneous and unnecessary deprivations of liberty. See *Schall v. Martin,* 467 U.S. 253, 263–64, 274, 104 S.Ct. 2403, 2409–10, 2415, 81 L.Ed.2d 207. *Morrissey* recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* 408 U.S. at 481, 92 S.Ct. at 2600. The later decision of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 articulated the algorithm for determining the process due as involving the consideration of three factors: (1) the private interest affected, (2) the risk of an erroneous deprivation and

the probable value of any additional or substitute procedural safeguards, and (3) the governmental actor's interest, including the function involved and the burdens of the alternative procedures. *Id.* at 335, 96 S.Ct. at 903; see also *Morrissey,* 408 U.S. at 481–90, 92 S.Ct. at 2600–05.

As already stated, the Supreme Court has held that parolees have a significant liberty interest in avoiding confinement. Although a parolee's liberty is conditioned on his or her abiding by the terms of parole, that liberty in a day-to-day sense is co-extensive with the liberty of citizens who have never been convicted of crimes. In its later decision of *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 the Supreme Court emphasized the importance of the parolee's liberty interest: "Even though the revocation of parole is not a part of the criminal prosecution, we held [in *Morrissey* ] that the loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." *Id.* at 781, 93 S.Ct. at 1759.

That confinement even for a short period of time vitiates this liberty interest is beyond dispute. The Supreme Court recognized these harms in *Morrissey* and in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, a case involving pretrial detention. *Barker* stated that pretrial detention "often means a loss of a job; it disrupts family life; and it enforces idleness." 407 U.S. at 532, 92 S.Ct. at 2193; see *Faheem-El,* 620 F.Supp. at 1318 ("The reincarcerated parolee is also subject to the many physical and psychological dangers of imprisonment."). In enacting the former federal parole guidelines in 1976, which provided for an individualized determination of whether release pending the final revocation hearing was appropriate, see 18 U.S.C. § 4214(a)(1)(A) (repealed by 98 Stat. 1837, 2027, 2031 (1984); 99 Stat. 1728 (1985), effective Nov. 1, 1987), Congress was motivated by the same concerns. The Senate Report stated:

> Because a new period of incarceration, even if only 24 hours in length, may cost a parolee his employment, and further jeopardize his chances for rehabilitation, the detention of an alleged violator is a serious matter and must be dealt with in a manner which clearly recognizes the degree of loss to be suffered.

S.Rep. No. 369, 94th Cong., 1st Sess. 18 (1975), *reprinted* in 1976 U.S. Code Cong. & Admin. News 335, 339.[4]

█ In the face of this general recognition of the importance of the parolee's liberty interest, Illinois has responded with unconvincing invocations of the pre-*Morrissey* concepts of "constructive custody" and "contract terms." The state bravely insists that notwithstanding *Morrissey* a parolee "remains in the constructive custody of the [Illinois] Department of Corrections" and that the arrest of the parolee "merely [effects] a 'transfer of the subject from constructive custody into actual or physical custody,'" quoting a case decided over 25 years prior to *Morrissey* and based on the since rejected right-privilege characterization. Appellants' Br. 31 (quoting *People v. Denne,* 141 Cal.App.2d 499, 510, 297 P.2d 451, 458 (1956)). The Supreme Court has clearly rejected such a cavalier treatment of parolees' liberty interest. Although it has stated that parolees have "more limited due process right[s]" than the accused in criminal prosecutions because parolees have been convicted of crimes, *Gagnon v. Scarpelli,* 411 U.S. at 789, 93 S.Ct. at 1763, the Court has disapproved of the notion that revocation proceedings merely alter the form of custody. Instead, the Court has stressed that they "determine whether the parolee will be free or in prison, a matter of obvious great moment to him" and has called the revocation of parole an "immediate disaster" for the parolee. *Wolff v. McDonnell,* 418 U.S. 539, 560–61, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935. Likewise, we reject the state's argument that "[i]n detaining a parolee pending the outcome of the revocation proceeding, the Board simply exercises a right it had clearly reserved at the time parole was granted." Appellants' Br. 26. The constitutionality of the Board's ability to detain all parolees without individualized consideration for release depends on the Due Process Clause and not on some notion of "contract terms" that is inextricably intertwined with the disreputed and wooden right-privilege characterization. *Morrissey,* 408 U.S. at 481, 92 S.Ct. at 2600 (citing *Graham v. Richardson,* 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534).

The *Morrissey* decision also defined the state's interests in revocation and concluded that some of those interests coincided with the parolee's. The Court found that society has an interest in restoring the parolee as a productive, law-abiding citizen and this encompasses avoiding the revocation of parole "because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions." 408 U.S. at 484, 92 S.Ct. at 2601. In *Barker v. Wingo,* the Court recognized that pretrial detention harms the public interest also, because society suffers from the overcrowding of jails, the cost of maintaining prisoners (and the families of incarcerated breadwinners), and the hardening of criminals because "[l]engthy exposure to these conditions 'has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult.'" 407 U.S. at 520–21, 92 S.Ct. at 2187 (footnote omitted). Although the state has "an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole," *Morrissey,* 408 U.S. at 483, 92 S.Ct. at 2601, the Court emphatically stated that "the argument cannot even be made here that summary treatment is necessary as it may be with respect to controlling a large group of potentially disruptive prisoners in actual custody." *Id.;* see *Wolff,* 418 U.S. at 561, 94 S.Ct. at 2977.

Just as *Morrissey* concluded that "the interest of both State and parolee will be furthered by an effective but informal hearing," 408 U.S. at 484–85, 92 S.Ct. at 2602, we reach the same conclusion in the context of considering a parolee's eligibility for release pending final revocation. It has been 15 years since the landmark *Morrissey* decision, and with the benefit of this hindsight it is possible to evaluate the plaintiff class's procedural claim in light of Illinois' implementation of the precepts of *Morrissey.* Faheem-El languished in jail over 11 months after his preliminary hearing until his final revocation hearing despite the fact that no hearing was ever held nor determination made that his release

---

**4.** As discussed *infra,* Congress has again provided for individualized consideration for bail pending a trial on the new crime for released federal prisoners who are sentenced under the new system of determinate sentences followed by supervised release.

would pose any risk of flight or future criminal activity. Judge Moran found here that this delay was not unusual: "Typically, many weeks and even many months separate the preliminary and final parole revocation hearings." 620 F.Supp. at 1318 (footnote omitted). He added that "[e]ven parolees who opt for an early hearing typically face weeks of incarceration." *Id.* at 1319 n. 15. The question remains whether any additional procedures could reduce the occurrence of erroneous and unnecessary deprivations of parolees' liberty.

Illinois urges that *Morrissey* supports its "procedure" of giving arrested parolees no consideration for release pending the final revocation hearing, provided that probable cause of a parole violation was found at the preliminary revocation hearing. The state relies on a sentence in *Morrissey*'s discussion of the preliminary hearing where the opinion states: "Such a determination [of probable cause] would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." 408 U.S. at 487, 92 S.Ct. at 2603. Given that the issue of consideration for release pending final revocation apparently was neither argued to the Court nor explicitly considered in the *Morrissey* majority opinion, we are reluctant to conclude our due process analysis on the basis of that *dictum*. An examination of later Supreme Court decisions convinces us that this sentence should be read as a recognition that many parolees will in fact be confined pending the final revocation hearing and not an approbation, much less a holding, that consonant with the Due Process Clause all parolees can be denied any consideration for release.

■ A parolee suffers a deprivation of liberty upon his or her arrest and detention under a parole violator warrant. *Moody v. Daggett,* 429 U.S. 78, 87, 97 S.Ct. 274, 278, 50 L.Ed.2d 236. Because detention pending final revocation may be quite lengthy— in Faheem-El's case it was over one year—a mere finding of probable cause is not sufficient to satisfy the Due Process Clause. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 the Court stated that "[i]n order to imprison a person prior to trial, the Government must comply with constitutional requirements" of a probable cause determination by a neutral magistrate, citing *Gerstein v. Pugh,* 420

U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 and a bail hearing, citing *Stack v. Boyle,* 342 U.S. 1, 5, 72 S.Ct. 1, 3, 96 L.Ed. 3. *Bell,* 441 U.S. at 534 n. 15, 99 S.Ct. at 1871 n. 15; see also *Schilb v. Kuebel,* 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 ("Bail, of course, is basic to our system of law, ... and the Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment."). The *Bell* Court treated as settled law that the government can confine arrestees pending trial *after* individualized determinations that "no other less drastic means [could] reasonably ensure [their] presence at trial." 441 U.S. at 523, 524, 534, 99 S.Ct. at 1866, 1871.

The plaintiff urges us—and the state chooses not to respond—that the recent decision of *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 supports his claim that a finding of probable cause is not by itself sufficient to support a lengthy period of confinement. In *Schall,* the Court analyzed a New York law providing for preventive detention of juveniles under the Due Process Clause of the Fourteenth Amendment, framing one question as "whether the procedures afforded juveniles detained prior to [the final hearing] provide sufficient protection against erroneous and unnecessary deprivations of liberty." 467 U.S. at 274, 104 S.Ct. at 2415 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18). Under the statute at issue in *Schall,* juveniles were accorded not only a *Gerstein*-styled probable cause hearing and an eventual final hearing, but also an initial appearance at which probable cause could be challenged, but more importantly for the present case, the judge determined if preventive detention was warranted based on the probation officer's report and counter-arguments of the juvenile and his or her parents and attorney. 467 U.S. at 275–77, 104 S.Ct. at 2415–16. If the judge decided to impose preventive detention because of either a "substantial probability" of flight or a "serious risk" that the juvenile might commit another crime before final disposition, he or she was required to state on the record the facts and reasons for doing so. *Id.* at 255 n. 1, 276, 104 S.Ct. at 2405 n. 1, 2416. This same decisional process on whether to detain was repeated at the probable cause hearing which was required to follow within three

days of the initial appearance. *Id.* at 277, 104 S.Ct. at 2416. Finally, the length of confinement prior to final disposition was strictly limited, the longest period being 17 days for the most serious crimes, and the final disposition hearing date was moved forward to ensure this. *Id.* at 270 and n. 20, 104 S.Ct. at 2413 n. 20. Thus, even though *Schall* held that the juvenile's liberty interest is less than that of an adult because of the state's *parens patriae* interest in promoting the welfare of the child, *id.* at 263, 104 S.Ct. at 2409, and the fact that "juveniles, unlike adults, are always in some form of custody," *id.* at 265, 104 S.Ct. at 2410, the Court did not end its analysis with the fact that there was a judicial finding of probable cause, but rather considered all of "the procedural protections that precede[d]" the imposition of detention. *Id.* at 281, 104 S.Ct. at 2419.

The procedural protections provided by Illinois to parolees stand in abject contrast to those approved by the Supreme Court in *Schall.* Parolees are accorded no individualized determinations of their suitability to remain on parole pending the final revocation hearing. The district court found that "the policy smacks of arbitrariness because it treats in the same manner people situated vastly differently." 620 F.Supp. at 1319. No matter how serious the charged offense, no matter how great the risk of flight or threat to the community, all parolees are denied consideration for conditional release. This blanket denial of consideration for release is inconsistent with the concern in *Schall* and *Morrissey* that procedures prevent erroneous and unnecessary deprivations of liberty.

Nor can the state claim that no erroneous deprivations have occurred. The Illinois Board's own statistics show that a significant number of those parolees who have received a new sentence, as opposed to just being arrested for a new crime, do not have their parole revoked: from 1982 to 1985, between 8% and 11% annually of all such "new sentence" violators, amounting to 790 persons over this four-year period, did not have their parole revoked.[5] Given that those revocation decisions were not made until after sentencing for the new crime, those persons more than likely suffered many months of confinement before their paroles were resumed.[6] Although technical violators are not part of the class certified by the district court, the large number of such violators who are detained and then restored to parole after the final revocation hearing illuminates the failure of the Board's procedures to prevent erroneous and unnecessary deprivations of liberty. The Board's statistics show that from 1982 to 1985, between 55% and 75% annually of all technical violators, a total of 3,342 parolees, were found at the final revocation hearing to have not violated a condition of their parole or, if a violation was found, revocation was deemed unwarrant-

5. These figures are from the Annual Reports published by the Board. State of Illinois Prisoner Review Board, 8th Annual Report, Jan. 1 to Dec. 31, 1985, at 8–9; *id.,* 7th Annual Report, at 8, 17; *id.,* 6th Annual Report, at 5, 9; *id.,* 5th Annual Report, at 17. In the first four years that these reports were published, 1978 to 1981, between 0% and 5% annually of all new-sentence violators did not have their parole revoked. See *id.,* 4th Annual Report, at Table VII; *id.,* 3rd Annual Report, at Table IV–A & B; *id.,* 2nd Annual Report, at Table IV–A & B; *id.,* 1st Annual Report, at Table IV–A. The reports do not offer any explanation for the increase in the number of new-sentence violators who are restored to parole.

6. It is possible that the Board restored these individuals to parole despite their new convictions because it considered the time spent awaiting a final revocation hearing a sufficient amount of supervision in jail for the violation. Although this *post hoc* rationalization was not advanced by the state and has no basis in the record, such a "procedure" does not prevent unnecessary deprivations of liberty because the length of confinement is determined by the time required to obtain a conviction and not by any Board determination of the appropriate period of incarceration for the violation.

As discussed *infra,* other procedures would allow a far more precise determination of the need for confinement, while entailing few burdens for the state. Therefore, although these statistics may be "largely irrelevant" for determining whether the underlying purpose of the detention is punitive, see *Schall,* 467 U.S. at 271–73, 104 S.Ct. at 2413–14, they are very relevant for answering the question posed by *Mathews* whether erroneous and unnecessary deprivations of liberty can be prevented by additional procedural safeguards. In the present case, this conclusion is inescapable because one cannot infer the legitimacy of a determination of the need to detain when in fact no determination was ever made. Compare *Schall,* 467 U.S. at 273, 104 S.Ct. at 2414.

ed.[7]  Additionally, the statistics kept by the Board do not tell the fate of those parolees arrested for a new crime but later acquitted by the courts.  Unless they violated a technical condition of their parole, they are presumably restored to parole after their acquittals because they are by definition not new-sentence violators.[8]  We agree with the district court that this indeterminate but presumptively not insignificant number of arrested parolees suffers erroneous and unnecessary deprivations of their liberty while they languish in jail awaiting their eventual vindication.  See 620 F.Supp. at 1319.

■  The state's argument that mandamus is available to prevent the lengthiest delays is of little comfort to those who should not have been confined for any length of time after the preliminary hearing.  We have already concluded that even detention for 24 hours can be very detrimental to the parolee.  See *supra* pp. 468–469.  "Short" detentions of several days that are erroneous and unnecessary are constitutionally intolerable if avoidable by non-burdensome procedures.

Such alternative procedures do exist.  The initial appearance procedure approved in *Schall* is one such alternative.  Another is the former federal parole statute, which allowed for individualized determinations at the preliminary hearing of the need for confinement pending final revocation.  The federal parole board could release the parolee, after finding probable cause to believe a condition of parole was violated, by determining that confinement pending further proceedings was not warranted by (1) the alleged seriousness or frequency of the violations, (2) the risk of flight, and (3) the danger of the parolee to himself or others.  18 U.S.C. § 4214(a)(1)(A) (repealed by 98 Stat. 1837, 2027, 2031 (1984); 99 Stat. 1728 (1985), effective Nov. 1, 1987).  A third alternative is the new federal statutory scheme enacting bail reform, determinate sentencing, and supervised release.  This law does away with parole revocation on the theory that re-incarceration is not appropriate for minor violations and major violations should be dealt with as new offenses and accordingly the parolee would be considered for bail as would any other arrestee.  S.Rep. 225, 98th Cong., 2d Sess. 125, *reprinted* in 1984 U.S.Code Cong. & Admin. News 3182, 3308; see 18 U.S.C. § 3142(c)(i).  The bail reform provisions allow the temporary detention of parolees arrested for a new crime but only if a "judicial officer determines" that the parolee "may flee or pose a danger to any other person or the community."  18 U.S.C. § 1342(d); see S.Rep. 225, *supra*, at 17, *reprinted* in 1984 U.S.Code Cong. & Admin. News, at 3200.  Furthermore, the detention following this individualized determination is limited to 10 business days, after which time, if the parolee is not taken into custody by the appropriate parole authority, then he or she is considered for bail under the other provisions of that section.  Individualized consideration of the need for detention, beyond a mere finding of probable cause of a parole violation, precedes the imposition of any confinement.

■  Individualized consideration of parolees for release pending the parole-revocation determination would impose few if any burdens on the state.  The determination of the need for confinement pending further proceedings could be incorporated in the preliminary revocation hearing and made by the same independent decisionmaker following the probable cause determination.  Given that under the commands of *Morrissey* parolees must be given notice of the charges and have the right to speak in their own behalf, the procedures are already in place at the preliminary revocation hearing to make a constitutionally sound determination of the need to confine an individual pending further revocation proceedings.  We leave it to the state to decide which factors are relevant to determine which parolees should not be confined pending the final revocation hearing, and

---

**7.** State of Illinois Prisoner Review Board, 8th Annual Report, Jan. 1 to Dec. 31, 1985, at 8–9; *id.,* 7th Annual Report, at 8, 17; *id.,* 6th Annual Report, at 5, 9; *id.,* 5th Annual Report, at 17.

**8.** See State of Illinois Prisoner Review Board, 5th Annual Report, Jan. 1 to Dec. 31, 1982, at 8 (defining parole violators as "new sentence (being convicted of a new criminal offense), and technical (violating the terms of the release agreement)").

what conditions, including possibly monetary bonds, might be imposed on those parolees who are determined to be eligible for release.[9] This procedure would cause no significant administrative burdens while greatly furthering the parolees' and state's interests in avoiding erroneous and unnecessary deprivations of liberty. Therefore, applying the test in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, we hold that the Due Process Clause requires that Illinois accord every parolee arrested on new criminal offenses an individualized determination at the preliminary revocation hearing of his or her suitability for release pending further revocation proceedings.

Our approval of the use of the preliminary revocation hearing for making the confinement determination assumes that the preliminary hearing comports with the Supreme Court's requirement in *Morrissey* that it occur "as promptly as convenient after arrest." 408 U.S. at 485, 92 S.Ct. at 2602. This Court observed in *Luther v. Molina,* 627 F.2d 71 (7th Cir.1980), that when Chief Justice Burger, the author of *Morrissey,* used that language he "seemed to be contemplating an almost immediate hearing." 627 F.2d at 75 n. 3. We concluded that "[i]t is possible that a ten day delay between detention and the preliminary hearing does not meet ... constitutional ... requirements." *Id.* The Illinois regulations require that the preliminary revocation hearing be held within 10 days of the parolee's apprehension and allow for its continuance for up to an additional 14 days to permit the production of relevant witnesses or evidence. Ill.Admin.Code tit. 20, § 1610.140(b)(3). The almost six-week period of confinement between Faheem-El's arrest and preliminary revocation hear-

ing did not satisfy constitutional requirements. And although we do not have before us the question whether Illinois' 10–day requirement—not to mention the possibility of an additional 14–day extension—satisfies due process, such lengthy delays are inappropriate when there have been no notice and hearing determining the need to confine the arrested parolee during the revocation process.

When deciding how lengthy a detention the Due Process Clause will tolerate before notice and a hearing are required, this opinion only decides the minimum requirements of due process and not the ideal. See *Morrissey,* 408 U.S. at 488–89, 92 S.Ct. at 2603–04; see also *Schall,* 467 U.S. at 281, 104 S.Ct. at 2418. *Schall v. Martin* is particularly helpful for our decision of this matter because there the Supreme Court based its decision in part on the fact that "juveniles, unlike adults, are always in some form of custody," 467 U.S. at 265, 104 S.Ct. at 2410, which is similar to the argument Illinois has pressed on us here. In *Schall,* the Supreme Court approved of a procedure allowing for detention for up to 17 days following a determination of the juvenile's suitability for release at an informal judicial hearing, called an "initial appearance," which had to be held immediately. *Id.* at 257 n. 5, 104 S.Ct. at 2406 n. 5. If special circumstances existed, this initial appearance could be postponed and the juvenile detained only until the next court day or for 72 hours, whichever came first. *Id.* In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, the Court required, "before or promptly after arrest," *id.* at 125, 95 S.Ct. at 869, a judicial determination of probable cause through an informal procedure not requiring such adversarial safeguards as confrontation and cross-ex-

---

**9.** The district court should retain jurisdiction over this case to hear any challenges by the plaintiff over the constitutionality of the factors and conditions chosen.

The state might decide to employ the three factors used by the former federal parole commission. See 18 U.S.C. § 4214(a)(1)(A). The Supreme Court has recently granted certiorari and heard oral argument in the January 1987 session in the case of *United States v. Salerno,* 794 F.2d 64 (2d Cir.1986), certiorari granted, — U.S. ——, 107 S.Ct. 397, 93 L.Ed.2d 351 (1986). The Second Circuit held in *Salerno* that the

provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.,* authorizing the pretrial detention of adult arrestees on the ground that their release on bail would pose a danger to the community or any person violate the constitutional guarantee of due process. We of course express no opinion on the issue but note that the outcome of that dispute will not affect this case because those detained under the Bail Reform Act have had the benefit of a prior judicial hearing on the need for confinement. 18 U.S.C. § 3142(f).

amination of witnesses. *Id.* at 119–25, 95 S.Ct. at 865–68. *Gerstein* declined to set a "specific timetable" but "indicated approval" for a model procedure that required a probable cause hearing within five days of detention. See *Schall*, 467 U.S. at 277 n. 28, 104 S.Ct. at 2416 n. 28 (citing *Gerstein*, 420 U.S. at 124 n. 25, 95 S.Ct. at 868 n. 25). However, that model procedure provided for a determination on the suitability for pretrial release prior to the probable cause hearing. *Gerstein*, 420 U.S. at 124 n. 25, 95 S.Ct. at 868 n. 25 (discussing the Uniform Rules of Criminal Procedure (Proposed Final Draft 1974)). Thus the Supreme Court did not indicate in *Gerstein* that a five-day delay before any hearing, informal or otherwise, on an arrestee's suitability for release pending further proceedings comported with due process.

■ In the present case, we cannot decline to set a timetable because the lengthy delays authorized by Illinois regulations—between 10 and 24 days—certainly vitiate the liberty interest that requires due process protection. Even a 24–hour detention can impose serious costs on the parolee, including the loss of a job, and with a view to *Schall* and *Gerstein* we hold that absent exceptional circumstances not presented by this case a five-day detention, *i.e.,* 120 hours, prior to an informal administrative hearing on the arrested parolee's suitability for release is the maximum that the Due Process Clause will tolerate. There seems to be no reason why such an informal hearing could not be held on the same day as the arrest of the parolee, and delays beyond five days are unconscionable given the parolees' and state's interests.[10]

In *Llaguno v. Mingey,* 763 F.2d 1560 (7th Cir.1985) (*en banc*), certiorari dismissed, —— U.S. ——, 107 S.Ct. 16, 92

L.Ed.2d 783 (1986), this Court made a unanimous *en banc* determination that a two-day detention prior to presentment to a magistrate of a plaintiff arrested on suspicion of involvement in a multiple homicide was unconstitutional as a matter of law. 763 F.2d at 1568 (opinion of Posner, J.); *id.* at 1570 (Cummings, C.J., concurring in part and dissenting in part); *id.* (Coffey, J., concurring in part and dissenting in part); *id.* at 1579–80 (Wood, J., dissenting in part and concurring in part). We stated:

> It did not require 42 hours to book David Llaguno and complete other paperwork necessary for bringing him before the magistrate to determine whether there was probable cause to hold him. ... Of course the delay here was not indefinite, but it was almost two days; and with no better reason offered than that the police were still investigating David's possible involvement in the crimes of his brother, it was too long.

> David Llaguno was entitled to a directed verdict that the defendants were liable for his being held in jail—at least beyond the brief period that would have been necessary to book him and bring him before a magistrate.

*Id.* at 1568. In *Llaguno* we cited with approval *Bernard v. City of Palo Alto,* 699 F.2d 1023 (9th Cir.1983) (*per curiam*), which held that 24 hours was the longest period a person could be held prior to presentment to a magistrate. In the case of an arrested parolee, the parolee's liberty interest is less than that of an ordinary citizen but the burden on the state for determining suitability for conditional release is also lesser. Unlike most arrestees, the defendants already have extensive, assembled information on arrested parolees and their community ties, so that less time should be required to consider arrested parolees for conditional release. Further-

---

10. Our approval of a maximum of a five-day detention prior to an informal hearing on suitability for conditional release is based on and limited to the balancing of the particular interests of parolees and the state in the parole-revocation process and is not meant to apply in dissimilar situations, such as the arrest of persons not on parole or probation. See *infra* note 12 (revocation of parole and revocation of probation are "constitutionally indistinguishable" for due process purposes); cf. *Moore v. Market-*

*place Restaurant,* 754 F.2d 1336, 1350–52 (7th Cir.1985) (four-hour detention of persons arrested for misdemeanor without probable cause determination by magistrate requires explanation). Of course, this five-day period does not begin to run until the parolee is held under a parole violator warrant or is otherwise in the custody of the Board. See *Moody v. Daggett,* 429 U.S. 78, 86–87, 97 S.Ct. 274, 278, 50 L.Ed.2d 236.

more, because this initial appearance need only be given if the preliminary hearing is not held within five days of the arrest and detention, it need not address the issue of probable cause and, in fact, probable cause could be assumed for the purposes of the initial appearance. A detention of up to five days prior to any sort of hearing represents an appropriate accommodation (under *Mathews*) of the interests of parolees and the state.

■ Within five days of a parolee's detention, Illinois must provide the arrested parolee with either a preliminary revocation hearing determining probable cause and suitability for release pending further revocation proceedings or an initial informal hearing on just the latter issue. This initial informal hearing on suitability for release need not include the traditional adversarial safeguards of cross-examination and confrontation of witnesses, see *Gerstein*, 420 U.S. at 120–22, 95 S.Ct. at 866–67, but it should be preceded by notice, conducted before an independent decisionmaker, and tailored to allow the parolee to state for the record reasons why he or she should be considered suitable for release. As in *Schall*, the decisionmaker should state on the record the facts and reasons for detention if ordered, and this initial determination should be reconsidered at the subsequent preliminary revocation hearing. See *Schall*, 467 U.S. at 276–77, 104 S.Ct. at 2416.[11]

When the preliminary revocation hearing cannot conveniently be held within five days of detention, the need for an initial informal hearing on suitability for release will increase the state's burden. However, this increased burden should be slight and does not change our analysis (under *Mathews*) of the requirements of due process. When the state relies exclusively on police reports, as was the case for Faheem-El, it would seem to be possible to hold the preliminary hearing within five days, if the state so chose. For those cases where an initial hearing is necessary, the informal, non-adversarial nature of that proceeding should prevent the state from incurring large administrative and fiscal burdens. This conclusion is bolstered by the fact that Illinois currently provides arrested probationers with a judicial hearing on their suitability for release pending further revocation proceedings. Ill.Rev.Stat. ch. 38, ¶ 1005–6–4(b). Illinois' use of a more burdensome judicial hearing for probationers demonstrates the feasibility of the less intrusive informal administrative hearing that we believe is required by the Due Process Clause.[12] This informal procedure would greatly increase the protection of arrested parolees' liberty interest by preventing erroneous and unnecessary deprivations of liberty for additional periods of 5 to 19 days—and in Faheem-El's case, 33 days—while parolees wait for a preliminary revocation hearing and a determination of suitability for release pending further proceedings. This significant improvement in the protection of the parolees' liberty interest more than justifies the slight burdens imposed upon the state.

■ It is important to state what this decision does not do. We do not hold that the consideration for conditional release owed parolees must be a "bail" hearing by a judicial officer. *Morrissey* recognized that parole matters were traditionally entrusted to administrative officials and de-

---

**11.** If the initial hearing results in the parolee being put on conditional release and this release does not entail a "significant restraint on liberty," then a preliminary revocation hearing probably would not be required. See *Gerstein*, 420 U.S. at 121 n. 22, 125 and n. 26, 95 S.Ct. at 869 n. 26; see also *Moody v. Daggett*, 429 U.S. 78, 86 n. 7, 97 S.Ct. 274, 278 n. 7, 50 L.Ed.2d 236 (preliminary revocation hearing not required if parolee has been convicted of new offense because it establishes probable cause of parole violation).

**12.** The procedures provided probationers are instructive on the procedures that are feasible to provide to parolees. Thus in the converse situation in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, the Court did not repeat its analysis of the burden on the state from imposing the *Morrissey* requirements on probation revocation but rather assumed that the result was the same. See 411 U.S. at 781–82 and n. 5, 93 S.Ct. 1759–60 and n. 5; cf. *id.* at 782 n. 3, 93 S.Ct. at 1756 n. 3 ("Despite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole.").

clined to require revocation hearings by judicial officers. 408 U.S. at 486, 92 S.Ct. at 2602. Illinois is correct that the Constitution does not require that the conditional-release decision be treated differently. Appellants' Reply Br. 13.[13] To the extent that the district court's opinion seems to require a bail hearing by a judicial officer, it is modified. Of course, the state might decide to employ the current bail system to meet its constitutional obligations. That is a matter for the state to decide. This Court when faced with a due process challenge only defines the minimum procedural safeguards required by the Constitution.

We also do not hold that parolees have a constitutional right to be conditionally released pending the final revocation hearing; we hold only that they have a constitutional right to be *considered* for such conditional release.[14] Thus today's decision is consistent with *Luther v. Molina*, where this Court stated that a parolee awaiting revocation proceedings does not have a constitutional right to release or bail. 627 F.2d at 76 n. 10. This Court held that when the federal parole commission has denied a parolee bail *after* employing the individualized consideration provided for in 18 U.S.C. § 4214(a)(1)(A), the district court should grant bail only in "extremely limited circumstances." 627 F.2d at 75–77; see also *Galante v. Warden*, 573 F.2d 707, 708 (2d Cir.1977) (*per curiam*) (where federal parolee who was subject to 18 U.S.C. § 4214(a)(1)(A) was detained by the parole

13. Illinois argues that allowing parolees arrested on new criminal charges consideration for conditional release would create the anomalous result that only those parolees arrested for less serious technical violations would not be considered for release because their alleged violations do not result in criminal charges. Appellants' Br. 36. The state's argument is premised on the fact that the district court seemed to think that the Due Process Clause required a judicial determination of bail rather than an administrative determination of conditional release. Because we hold the latter to satisfy minimum procedural requirements, technical violators will not forever be unequally treated; their revocations are handled by the same administrative system. Their relief only awaits enlightened state action or another lawsuit.

14. Those decisions that hold that arrested parolees do not have a "right to be released on bail" are thus distinguishable from the present case.

commission pending final resolution, court held district court should only grant bail in most unusual circumstances). The reasoning in *Luther* was that the decision to release the parolee pending further revocation proceedings was committed to the agency's discretion, and absent an allegation such as the parole commission "is not exercising its discretion at all [, and] that its action in denying release is so arbitrary that due process rights are violated," the courts should not interfere. 627 F.2d at 76 (footnote omitted).

Faheem-El's complaint is not that he has an absolute right to be released or that the Board incorrectly exercised its discretion in refusing to release him, but rather that he was not given any consideration for conditional release. Illinois concedes that, pursuant to Illinois law, the Board exercised no discretion in his or any other arrested parolee's case. Therefore *United States ex rel. Napoli v. State of New York*, 379 F.Supp. 603 (E.D.N.Y.1974), is apt to the present case. It held:

The blanket policy of the State Board of Parole, holding all suspected violators in custody until full determination of state criminal charges, is a way of doing injustice wholesale. The federal constitution at least requires that every parole violator be treated as an individual, and not denied bail as a matter of policy.

*Id.* at 606 (cited by *Luther*, 627 F.2d at 76 n. 7). The failure to provide individualized consideration of a parolee's suitability for

See, *e.g., Argro v. United States*, 505 F.2d 1374, 1377–78 (2d Cir.1974) (stating that parolees do not have a constitutional right to bail but not deciding "whether there is never a right to bail on the normal detention of a parolee pending a revocation hearing"); *In re Whitney*, 421 F.2d 337 (1st Cir.1970) (pre-*Morrissey* decision addressing only the Eighth Amendment claim of a "right to bail"). The district court's analysis of this line of cases is commendable:

[Faheem-El's] case represents a challenge to the defendants' denial of bail to each and every alleged parole violator, regardless of the nature of his conviction or the alleged criminal activity that prompted his arrest....

Almost all right-to-bail cases, in contrast, raise the issue in the context of a single individual challenging a denial of bail. In light of the language and history of the bail clause, courts are understandably reluctant to recognize an absolute right to bail....

620 F.Supp. at 1316–17 (footnote omitted).

conditional release does "injustice wholesale" and is unconstitutional (applying *Mathews*) because procedural safeguards entailing minimal burdens could prevent the erroneous and unnecessary deprivations of liberty that have occurred.

In our view the Due Process Clause of the Fourteenth Amendment requires that arrested parolees be considered for conditional release pending further revocation proceedings. Therefore, we vacate the stay the district court imposed on its order of preliminary injunctive relief in favor of the plaintiff class. The district court should enter summary judgment on the conditional-release issue in favor of the plaintiff class and issue an injunction requiring Illinois to provide all parolees arrested on new criminal charges individualized consideration for conditional release within five days of their arrest and detention.

Stay vacated; opinion affirmed as modified and remanded with directions.

